**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALLIANCE OF NONPROFITS FOR INSURANCE, RISK RETENTION GROUP,<br>　　　　　　*Plaintiff-Appellee*,<br><br>v.<br><br>SCOTT J. KIPPER, Commissioner of Insurance of the State of Nevada,<br>　　　　　　*Defendant*,<br><br>and<br><br>DEPARTMENT OF BUSINESS AND INDUSTRY, DIVISION OF INSURANCE; STATE OF NEVADA; SCOTT J. KIPPER, Commissioner of Insurance of the State of Nevada,<br>　　　　　*Defendants-Appellants*. | No. 11-16836<br><br>D.C. No.<br>2:10-cv-01749-JCM-RJJ |

ALLIANCE OF NONPROFITS FOR
INSURANCE, RISK RETENTION
GROUP,

          *Plaintiff-Appellee*,

       v.

SCOTT J. KIPPER, Commissioner of
Insurance of the State of Nevada;
DEPARTMENT OF BUSINESS AND
INDUSTRY, DIVISION OF INSURANCE;
STATE OF NEVADA,

          *Defendants-Appellants*.

No. 11-17871

D.C. No.
2:10-cv-01749-
JCM-RJJ

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted
February 11, 2013—San Francisco, California

Filed April 8, 2013

Before: Jerome Farris, Sidney R. Thomas,
and N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

# SUMMARY[*]

## Insurance / Preemption

The panel affirmed in part and vacated in part the district court's judgment in favor of a risk retention group, which claimed that an order of the Nevada Commissioner of Insurance violated the Liability Risk Retention Act.

Affirming the district court's entry of declaratory and injunctive relief, the panel held that the Act preempted the Commissioner's order prohibiting the risk retention group from writing "first dollar" automobile liability insurance policies because the order made it unlawful for the group to operate in Nevada. The panel held inapplicable an exception for state laws that specify acceptable means for demonstrating financial responsibility, where the state has required such a demonstration as a condition for obtaining a license or permit. The panel stated that the Commissioner's order could not be saved from preemption because, under *National Warranty Ins. Co. v. Greenfield*, 214 F.3d 1073 (9th Cir. 2000), it violated the Act's anti-discrimination provision.

The panel vacated the district court's award of attorneys' fees under 42 U.S.C. § 1988 because the Act's preemption provision did not unambiguously confer a right to be free from state law that can be enforced under 42 U.S.C. § 1983.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Catherine Cortez Masto, Attorney General, and Shane D. Chesney (argued), Senior Deputy Attorney General, Carson City, Nevada; Joanna N. Grigoriev (briefed and argued), Deputy Attorney General, Las Vegas, Nevada, for Defendants-Appellants.

Kimberly Maxson-Rushton (briefed and argued), Cooper Levenson April Niedelman & Wagenhein, P.A., Las Vegas, Nevada, for Plaintiff-Appellee.

Robert H. Myers, Jr. and Cindy Chang, Morris Manning & Martin, LLP, Washington, D.C., for Amici Curiae Captive Insurance Companies Association, National Risk Retention Association, Nevada Captive Insurance Association, and Vermont Captive Insurance Association.

Susan Stapp, Assistant Chief Counsel; Jill A. Jacobi (argued), Senior Staff Counsel, California Department of Insurance, San Francisco, California, for Amicus Curiae California Insurance Commissioner Dave Jones.

Daniel Labrie, Housing Authority Risk Retention Group, San Francisco, California, for Amicus Curiae Housing Authority Risk Retention Group, Inc.

Jan Holt, United Educators; Thomas W. Brunner, Lawrence H. Mirel, A. Xavier Baker, Wiley Rein LLP, Washington D.C., for Amicus Curiae United Educators Insurance, a Reciprocal Risk Retention Group.

Clifford Peterson and David Cassetty, Vermont Department of Banking, Insurance, Securities, and Health Care Administration, Montpelier, Vermont, for Amicus Curiae Vermont Department of Banking, Insurance, Securities, and Health Care Administration.

Robert M. McKenna, Attorney General; Marta U. DeLeon, Assistant Attorney General, Olympia, Washington, for Amicus Curiae Washington State Insurance Commissioner Mike Kreidler.

## OPINION

N.R. SMITH, Circuit Judge:

The Liability Risk Retention Act (the "LRRA") broadly preempts "any State law, rule, regulation, or order to the extent that such law, rule, regulation, or order would . . . make unlawful, or regulate, directly or indirectly, the operation of a risk retention group." 15 U.S.C. § 3902(a)(1). This provision preempts the Order of the Nevada Commissioner of Insurance (the "Commissioner"), which prohibited Alliance of Nonprofits for Insurance, Risk Retention Group ("ANI") from writing "first dollar" liability policies in Nevada. Therefore, we affirm the district court's entry of declaratory and injunctive relief in favor of ANI. However, because the LRRA's preemption provision does not unambiguously confer a right to be free from state law that can be enforced under 42 U.S.C. § 1983, we vacate the fee award.

## FACTS

ANI is a risk retention group ("RRG"),[1] chartered in Vermont. In 2001, ANI registered with the Division of Insurance of Nevada's Department of Business and Industry (the "Division") to transact liability insurance in Nevada. By registering with the Division, ANI obtained a Certificate of Registration; however, the Division has not issued ANI a Certificate of *Authority*.[2]

As a registered insurer, ANI provided "first dollar, automobile liability coverage to its Nevada members." "First dollar" insurance policies are "motor vehicle polices that are required by state law to comply with financial responsibility minimums." For example, to register a vehicle in Nevada, state law requires the owner to obtain an insurance policy that covers, at a minimum, $15,000 per person, per accident; $30,000 per two or more persons, per accident; and $10,000 of property damage, per accident. Nev. Rev. Stat. § 485.185. A policy that meets these coverage requirements is a "first dollar" liability policy, because the first dollars paid out on a claim (up to the coverage limits) are paid out under the policy.

---

[1] In general, an RRG is an insurance company that only insures the liability risks of its owners. *See* 15 U.S.C. § 3901(a)(4)(A), (E). However, § 3901(a)(4) enumerates several requirements that an RRG must satisfy in order to come within the scope of the LRRA's coverage.

[2] Moreover, it appears that ANI has never sought to obtain one.

Under Nevada's Motor Vehicle Insurance and Financial Responsibility Act ("NMVIFRA"),[3] Nev. Rev. Stat. §§ 485.010–.420, automobile owners (who have registered their cars in the state) must obtain their first dollar liability policy from a provider who is "authorized to transact business" in Nevada. *Id.* §§ 485.185, .037(1), .055(1). Only insurers who possess a "certificate of authority" from the Commissioner are authorized to transact business in the state. *Id.* § 679A.030(1). ANI does not have such a certificate. As a result, in April 2010, the Nevada Department of Motor Vehicles ("DMV") began denying vehicle registrations to vehicle owners who obtained their first dollar liability policies from ANI.

In May 2010, ANI sought a hearing before the Commissioner. Following the hearing, the Commissioner issued an Order prohibiting ANI from writing first dollar liability policies in Nevada. The Commissioner's Order contained the following relevant provision:[4]

> 1. ANI shall, within sixty (60) days from the date of this Order, cease and desist writing first dollar or mandated motor vehicle financial responsibility insurance coverage, required by NRS 485.3091. ANI may directly write excess liability

---

[3] Laws like the NMVIFRA, which require motorists to provide proof of financial responsibility, are referred to generically in this opinion as "MVIFRAs"—motor vehicle insurance and financial responsibility acts.

[4] The Commissioner amended paragraph 1 of the Order two days after entering it. The portion of paragraph 1 quoted above contains the amended provision.

> coverage; however, a fronting arrangement with an authorized insurer that holds a valid Nevada certificate of authority shall be required to provide first dollar or mandated motor vehicle financial responsibility insurance coverage, required by NRS 485.3091.

Primarily, the Commissioner enjoined ANI from writing first dollar liability insurance, because it did not possess a Certificate of Authority and, therefore, was not an "authorized insurer."[5]

ANI then filed this lawsuit, in the United States District Court for the District of Nevada, seeking declaratory and

---

[5] Though it could be implied, the Order does not explicitly state that ANI was prohibited from obtaining a Certificate of Authority from the Commissioner. It states that "[i]nsurers that hold a Nevada certificate of authority are . . . subject to the Nevada Insurance Guaranty Association ('NIGA')," but acknowledges that—under the LRRA—RRGs like ANI "cannot participate in the NIGA." *See* 15 U.S.C. § 3902(a)(2). Such a statutory scheme would clearly be preempted by the LRRA under *National Warranty Ins. Co. RRG v. Greenfield*, 214 F.3d 1073 (9th Cir. 2000). *See infra*. However, it appears that this may not be how Nevada's statutory scheme actually operates. After the parties filed motions for summary judgment, the Commissioner filed an affidavit to "clarify any possible ambiguity" in the Order. That affidavit indicates that domestic RRGs can become authorized insurers by obtaining a Nevada Certificate of Authority, and that RRGs are not required to join the NIGA in order to obtain such a certificate. Assuming that the Commissioner's affidavit correctly states the law, RRGs may therefore write first-dollar liability policies in Nevada. However, the affidavit does not state that this route is available to *foreign* RRGs, like ANI. Additionally, while the Commissioner's interpretations of state statutes in the affidavit are well-taken, the Commissioner has not pointed to a Nevada law that would permit his affidavit to change the legal effect of the Order.

injunctive relief against the Commissioner and the Division of Insurance under 42 U.S.C. § 1983. The parties filed cross-motions for summary judgment. Ruling on the motions, the district court granted summary judgment to ANI in an order without any discussion. The relevant parts of the order state:

> IT IS FURTHER ORDERED THAT Nev. R. Stat. 485.185, Nev R. Stat. 679A.030(1) and Nev. R. Stat. 687A.040 and related statutes and regulations of the State of Nevada are preempted by the [LRRA] pursuant to the Supremacy Clause of the Constitution, *as applied to [ANI]* insofar as they prohibit [ANI] from issuing first dollar automobile liability insurance policies in the State of Nevada.

> IT IS FURTHER ORDERED THAT the phrase "authorized insurer," as used in the Nev. R. Stat. 679A.030, shall be interpreted to include [RRGs] such as [ANI].

> IT IS FURTHER ORDERED THAT defendants are permanently enjoined from enforcing Nev. R. Stat. 485.185, Nev. R. Stat. 679A.030(1) and Nev. R. Stat. 687A.040 and related statutes and regulations against members of [ANI], insofar as they prohibit [ANI] from issuing first dollar automobile liability insurance policies in the State of Nevada.

> IT IS FURTHER ORDERED THAT [ANI] is entitled to a remedy under 42 U.S.C.

> § 1983 and, therefore is entitled to an award
> of attorney fees under 42 U.S.C. § 1988 to be
> set pursuant to FRCP 54.

As the prevailing party, ANI then requested $127,828.00 in fees and $4,643.41 in costs. In its request, ANI sought to recover fees and costs both for itself and for its *amicus*, the National Risk Retention Association (NRRA). For itself, ANI requested $83,572.50 in fees and $3,341.75 in costs. For the NRRA, ANI requested $44,255.50 in fees and $1,301.66 in costs. On November 2, 2011, the district court awarded ANI $86,914.25 in fees and costs, but only awarded costs to the NRRA in the amount of $1,301.66. The Commissioner then appealed.

On appeal, the Commissioner challenges both the grant of summary judgment and the award of attorneys' fees.[6] The Commissioner argues that ANI was not entitled to declaratory or injunctive relief, because the LRRA does not preempt Nevada law. The Commissioner also argues that, even if the LRRA does preempt Nevada law, ANI was not entitled to attorneys' fees. We affirm the district court's entry of declaratory and injunctive relief, but vacate the fee award.

---

[6] The Commissioner does not challenge the district court's award of costs on appeal, and neither ANI nor the NRRA have cross-appealed the district court's denial of fees to the NRRA.

## DISCUSSION

### I. The district court correctly held that the LRRA preempts the Commissioner's Order.

We review the district court's grant of summary judgment to ANI, finding that the LRRA preempts the Commissioner's Order, de novo. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012). "In this case, there are no disputes about the material facts." *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1057 (9th Cir. 2012). Therefore, "the only question is the legal one of whether [the LRRA preempts Nevada law]."[7] *Id.*

The LRRA broadly preempts "any State . . . order to the extent that such . . . order would . . . make unlawful, or regulate, directly or indirectly, the operation of [an RRG]." 15 U.S.C. § 3902(a)(1). Here, the Commissioner's Order makes it unlawful for ANI, an RRG, to operate in Nevada, to the extent ANI sought to write first dollar liability insurance. Thus, the Order plainly fits within the scope of LRRA preemption. Because the Order fits within the scope of

---

[7] The parties did not clearly identify whether the state law at issue was the Commissioner's Order or Nevada's statutory scheme. However, ANI appealed from the district court's summary judgment order, where the court held that the LRRA preempted a group of Nevada statutes "*as applied* to [ANI] insofar as they prohibit [ANI] from issuing first dollar automobile liability insurance policies in the State of Nevada." Since the Commissioner's Order applied Nevada law to ANI, the preemption effected by the district court's decision is logically limited to that Order. Moreover, at the summary judgment hearing, the court clarified that the relevant issue was whether the Commissioner's Order was preempted, not whether the state statutes themselves were preempted. Like the district court, we therefore confine our analysis to the Commissioner's Order.

LRRA preemption, it is invalid unless one of the LRRA's exceptions from preemption applies.

Only one exception is relevant here.[8]  Section 3905(d) saves from preemption state laws that "specify acceptable means of demonstrating financial responsibility where the State has required a demonstration of financial responsibility as a condition for obtaining a license or permit to undertake specified activities."   15 U.S.C. § 3905(d).   Nevada's MVIFRA (which gave rise to the Commissioner's Order) is an example of such a state statute.  The NMVIFRA requires those who own or operate a vehicle in Nevada to demonstrate financial responsibility in order to register and operate the vehicle. *See* Nev. Rev. Stat. § 485.187(1)(a); *id.* § 482.205. Owners and operators demonstrate financial responsibility by providing proof of insurance from an authorized insurance provider in specified minimum coverage amounts.   *Id.* § 485.185.

Section 3905(d) of the LRRA preserves Nevada's ability to specify which types of insurance may satisfy this requirement.   Specifically, § 3905(d) permits states to "include or exclude insurance coverage obtained from . . . [an RRG]" as a means of satisfying the state's financial responsibility requirements. 15 U.S.C. § 3905(d). Arguably, the Commissioner's Order does not fit within this exception, because it bars ANI from writing a certain type of insurance

---

[8] The Commissioner and his amicus suggest that the exception from preemption in 15 U.S.C. § 3905(a) applies in this case.  That section carves out from the LRRA's general preemption "the policy form or coverage requirements of any State motor vehicle no-fault or motor vehicle financial responsibility insurance law."  15 U.S.C. § 3905(a). However, this exception does not apply here, because the Commissioner's Order had nothing to do with policy form or coverage requirements.

policy altogether. Thus, it goes beyond merely excluding first dollar liability policies written by ANI from the acceptable class of insurance policies that will satisfy Nevada's financial responsibility requirement.

Assuming, however, that the Order fits within the scope of § 3905(d), it still would not qualify for the exception. Section 3905(d) is "subject to the provisions of section 3902(a)(4)"—the LRRA's anti-discrimination provision. Section 3902(a)(4) preempts state laws that "otherwise, discriminate against a risk retention group or any of its members." Under our precedent, the Commissioner's Order discriminates against ANI in violation of this section.

In *National Warranty Insurance Co. v. Greenfield*, 214 F.3d 1073 (9th Cir. 2000), we held that the LRRA preempted the Oregon Service Contract Act (the "OSCA"), and that the OSCA did not qualify for the § 3905(d) exception from preemption. Similar to the NVMIFRA, the OSCA required car dealers in Oregon who sold vehicle service contracts to demonstrate financial responsibility by obtaining insurance coverage for their contract obligations from an "authorized insurer." *Id.* at 1075–76. Through a combination of state statutes and the LRRA, RRGs not domiciled in Oregon could not become authorized insurers, because they could not obtain a "certificate of authority." *Id.* at 1076. As a result, Oregon "effectively preclude[d] *all RRGs* from providing insurance coverage for motor vehicle service contracts." *Id.* at 1076 (emphasis added). We concluded that such laws, which exclude all RRGs from providing a certain type of insurance, do not qualify for the § 3905(d) exception.

We also held that the OSCA violated the § 3902(a)(4) anti-discrimination provision.[9]  *Id.* at 1082.  To make that determination, we held that insurers could prove that a state law discriminated in violation of § 3902(a)(4) by showing that a law differentiates between insurance providers "without an acceptable justification."  *Id*. at 1081.  Thus, to survive § 3902(a)(4), "the state must show that a law differentiating between an RRG and an [authorized insurer]—or between all RRGs and all [authorized insurers]—is justified by the desire to" "protect those who would benefit from the purchase of insurance."  *Id.* at 1078, 1081.  Members of the public, who may suffer harm as a result of the policyholder's conduct, benefit from the purchase of first dollar liability policies.  The insurer's obligation under the policy to pay claims made against its insured increases an injured individual's opportunity for recovery.  The LRRA expressly permits states to regulate RRGs in order to protect the interests of such individuals.  As a result, "state laws requiring an RRG to engage in fair settlement practices, to designate an agent for the service of process, to submit to examinations necessary to insure financial soundness, [and] to avoid false and misleading advertisements" are exempt from preemption.  *Id.*; *see also* 15 U.S.C. § 3902(a)(1).  Nevertheless, in *National Warranty*, the State of Oregon did not offer such a justification for preventing *all* RRGs from writing insurance that would satisfy the OSCA's financial responsibility

---

[9] In part of that holding not relevant here, we concluded that § 3905(d) "permits the state to exclude coverage only from particular RRGs," not from *all* RRGs.  *Id.* at 1078, 1081–82 (emphasis added).  Oregon's statutory scheme did not fit within this provision, because the OIGA membership requirement effectively precluded all RRGs from writing service-contract insurance.  However, as discussed above, the Commissioner's Order excluded only a particular RRG (ANI), which *National Warranty* permits if it is non-discriminatory.

requirement. *Id.* at 1081–82. By differentiating between RRGs and authorized insurers without an acceptable justification, the OSCA violated § 3902(a)(4).

We reach the same conclusion in this case. The Commissioner's Order bars ANI from writing first dollar insurance, because ANI does not possess a Certificate of Authority. The Order itself does not provide any other acceptable justification for treating ANI differently than authorized insurers; the Commissioner has not cited any other acceptable justification on appeal. Thus, the Order violates § 3902(a)(4) by differentiating between ANI and authorized insurers without an acceptable justification. Accordingly, it cannot be saved from preemption by § 3905(d).

None of the Commissioner's objections to this analysis are persuasive. First, the Commissioner urges us to overrule *National Warranty* and to instead adopt the reasoning of the Eleventh and Seventh Circuits. *See Mears Transp. Grp. v. Florida*, 34 F.3d 1013 (11th Cir. 1994); *Opthalmic Mutual Ins. Co. v. Musser*, 143 F.3d 1062 (7th Cir. 1998). Under those cases, a plaintiff could only prove discrimination under § 3902(a)(4) by proving intentional discrimination. *Mears*, 34 F.3d at 1018; *Opthalmic*, 143 F.3d at 1069–70. However, under our circuit precedent, we must apply *National Warranty* here. It is binding authority that no competent body has overruled. *See Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc). Additionally, we decided *National Warranty* after both *Mears* and *Opthalmic*, and considered the reasoning of those opinions before reaching our holding in *National Warranty*. *See National Warranty*, 214 F.3d at 1082 ("[W]e know that, in deciding [this case] as we do, we disagree with the Seventh and Eleventh Circuits.").

Accordingly, we decline the Commissioner's invitation to revisit *National Warranty*.

Second, the Commissioner argues that Nevada's *statutory scheme* is not discriminatory. Even if that is true, the Commissioner's argument misses the point that the state law at issue here is the Commissioner's Order, which prohibits ANI from writing first dollar liability insurance. Thus, it is not relevant to this case that (as the Commissioner asserts) state statutes do not prevent domestic RRGs from obtaining Certificates of Authority and, therefore, writing first dollar liability insurance. It is also not relevant that foreign RRGs like ANI could use certain workarounds to effectively write first dollar insurance in other ways, e.g., by self-insuring, or entering into a "fronting" arrangement with a Nevada-based company.[10] Because the Commissioner's Order itself is discriminatory, it is preempted by the LRRA.

Finally, the Commissioner argues that, even if Nevada's MVIFRA does discriminate against RRGs, that

---

[10] In addition to being irrelevant, these options are not satisfactory alternatives for foreign RRGs like ANI. ANI cannot use self-insurance to provide liability insurance to its members, because only entities that own more than ten vehicles may satisfy the financial responsibility requirement by self-insuring. *See* Nev. Rev. Stat. § 485.380(1). ANI is an *insurer*, not an *insured*, and thus it does not own any vehicles in Nevada. Additionally, forcing ANI to take the circuitous route of entering into a fronting arrangement with a Nevada-based entity in order to provide first dollar liability policies to nonprofits within the state is contrary to the purposes of the LRRA. One of the main purposes for the LRRA's enactment was the elimination of state-law hurdles to interstate operation. *See infra* p. 22. Thus, although Nevada law would technically permit ANI to effectively provide first dollar liability insurance through other means, the fact remains that ANI (and presumably other foreign RRGs) would be the only insurance companies required to take those steps.

discrimination is justified, because it is done in the interest of protecting "innocent third parties" who may be harmed by a policyholder, and therefore make a claim against the insurance company. Although we are not analyzing Nevada's MVIFRA itself here, we will assume that the Commissioner would offer this same justification in support of his Order. On that assumption, we have recognized that the "state's desire to protect those who would benefit from the purchase of insurance" could justify differentiating between an RRG and another insurer. *See National Warranty*, 214 F.3d at 1081. However, this policy concern fails to justify the Commissioner's differentiation between ANI and authorized insurers. The Commissioner does not suggest that, because it lacks a Certificate of Authority, ANI presents a greater risk to those who would benefit from the purchase of insurance than an authorized insurer. Contrary to the Commissioner's assertion, a Certificate of Authority is not necessary to provide such protection. Nevada law requires RRGs (who don't have a Certificate of Authority) to comply with requirements that facilitate the Commissioner's oversight of their operations. Nev. Rev. Stat. § 695E.140(3). For example, each foreign RRG must submit to examinations by the Commissioner "to determine its financial condition." *Id.* § 695E.190(1); *see also* 15 U.S.C. § 3902(a)(1)(E) (excepting such requirements from preemption under the LRRA). Further, as recognized in *National Warranty*, the LRRA permits states to protect the interest of those who benefit from the purchase of insurance through a variety of means, obviating the need for an RRG to obtain a Certificate of Authority from a state. *See National Warranty*, 214 F.3d at 1081. Therefore, the Commissioner can still protect innocent third parties against the risks ANI might present, even though it does not have a Certificate of Authority. Accordingly, the

Commissioner's proffered justification for treating ANI differently from an authorized insurer fails.

We agree with the district court that the LRRA preempts the Commissioner's Order.  Accordingly, we affirm the district court's grant of summary judgment to ANI on its preemption claim.

## II. ANI is not entitled to attorneys' fees under 42 U.S.C. § 1988.

Because ANI brought this suit under 42 U.S.C. § 1983 and was the prevailing party, the district court awarded ANI attorneys' fees under 42 U.S.C. § 1988.  On appeal, the Commissioner argues that ANI was not entitled to attorneys' fees, because preemption of state law under the LRRA is not a "right" that can be enforced under 42 U.S.C. § 1983.  We agree with the Commissioner, and vacate the fee award.[11]

As a predicate to an award of attorneys' fees under 42 U.S.C. § 1988, one must bring an "action or proceeding to enforce . . . [42 U.S.C. § 1983]."  42 U.S.C. § 1988(b). Section 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities, secured by the Constitution and laws [of the United States]."  Therefore, to determine whether ANI is entitled to an award of attorneys'

---

[11] Because we conclude that the LRRA does not confer a right to be free from state law that can be enforced under § 1983, we do not need to reach the Commissioner's argument that he is immune from liability for fees. Additionally, we note that federal statutes other than § 1983 provided the district court with authority to enter declaratory and injunctive relief.  *See* 28 U.S.C. § 2201; 28 U.S.C. § 2202; *see Rincon Band of Mission Indians v. Harris*, 618 F.2d 569, 575 (9th Cir. 1980) (noting that 28 U.S.C. § 2202 authorizes district courts to grant injunctive relief).

fees, we must first determine whether the LRRA's preemption provision confers an enforceable right to be free from state law. No federal courts of appeal have directly analyzed whether 15 U.S.C. § 3902 of the LRRA confers such a right on RRGs.[12]

"[T]he Supremacy Clause, of its own force, does not create rights enforceable under § 1983." *See Golden State Transit Corp. v. City of L.A.*, 493 U.S. 103, 107 (1989) (footnote omitted). Accordingly, "it would obviously be incorrect to assume that a federal right of action pursuant to § 1983 exists every time a federal rule of law pre-empts state regulatory authority." *Id.* at 108. Instead, we must analyze the statute that allegedly gives rise to the enforceable right to determine whether Congress conferred such a right in the statute. In *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997), the Supreme Court outlined the three-factor framework for conducting such an analysis. A statute only confers an enforceable right if (1) the plaintiff demonstrates that "Congress . . . intended that the provision in question benefit the plaintiff," (2) "the plaintiff . . . demonstrate[s] that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence," and (3) "the provision giving rise to the

---

[12] In *White Mountain Apache Tribe v. Williams*, 810 F.2d 844 (9th Cir. 1987), we held that claims of field and conflict preemption were not rights that could be enforced under § 1983. *Id.* at 850. However, *White Mountain* does not control this case, because the LRRA preempts state law expressly. *See* 15 U.S.C. § 3902(a). Additionally, in *National Warranty*, the district court concluded that LRRA preemption could be enforced under § 1983. 24 F. Supp. 2d 1096, 1109–10 (D. Or. 1998). We affirmed, but did not address the issue of whether actual preemption conferred a right that could be enforced under § 1983. *See generally National Warranty*, 214 F.3d 1073.

asserted right [is] couched in mandatory, rather than precatory, terms." *Id.* The Supreme Court clarified what evidence was sufficient to satisfy the first factor in *Gonzaga University v. Doe*, 536 U.S. 273, 276 (2002). There, the Court held that the mere fact that a plaintiff *benefited* from a statute did not give him or her a right to sue under § 1983 when the statute was violated. *See id.* at 283; *see also Blessing*, 520 U.S. at 340 ("In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*."). Rather, Congress must have "unambiguously conferred" a right on a plaintiff for that plaintiff to have a cause of action under § 1983. *Gonzaga Univ.*, 536 U.S. at 283.

Here, even though ANI benefits from the LRRA (particularly the freedom from multiplicitous and discriminatory state regulation), "fall[ing] within the general zone of interest that the statute is intended to protect" is not enough. *Id.* at 283. Rather, to enforce LRRA preemption under § 1983, ANI must demonstrate that Congress "unambiguously conferred [a] right" on it. *Id.* Analyzing the text of 15 U.S.C. § 3902(a)(1) and the legislative history of the LRRA, we cannot say that Congress unambiguously conferred a right on RRGs to be free from state law in the LRRA. *See Gonzaga Univ.*, 536 U.S. at 286; *Ball v. Rodgers*, 492 F.3d 1094, 1106 (9th Cir. 2007) ("[W]e have sometimes turned to a statute's legislative history to help flesh out congressional intent regarding the creation of a federal right.").

Initially, looking exclusively at the text of § 3902(a)(1), one could conclude that Congress did employ "rights-creating language" when it preempted state laws that regulate RRGs. *Gonzaga Univ.*, 536 U.S. at 287. In *Gonzaga University*, the

Court pointed to the "individually focused terminology of Titles VI and IX" as paradigmatic rights-creating language. *See Gonzaga Univ.*, 36 U.S. at 284 n.3, 287. Title VI provides that "No person in the United States shall . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Employing a similar construction, Title IX states "No person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Such language, which is "phrased in terms of the persons benefited," is necessary evidence that Congress intended to create an enforceable right. *See id.* at 284 & n.3.

Like the terminology of Title VI and Title IX, the language of § 3902(a) is also phrased in terms of the "benefited" person. Section 3902(a) specifies that "a risk retention group is exempt from any State law, rule, regulation, or order . . . ." 15 U.S.C. § 3902(a). Thus, just as Titles VI and IX declare that no person shall be subject to discrimination, § 3902(a) effectively declares that no RRG shall be subject to state regulation. All three statutes are phrased in terms of the benefited party. Yet, even if such language is *necessary* to the conclusion that Congress intended to create an enforceable right, *see Watson v. Weeks*, 436 F.3d 1152, 1159 (9th Cir. 2006), that does not mean it is *sufficient* to do so. Rather, we ultimately must determine whether "Congress intended to create a federal right." *Gonzaga Univ.*, 536 U.S. at 283. The legislative history of the LRRA indicates that Congress had no intention of conferring a right to be free from state law on RRGs that would be enforceable under § 1983.

Fundamentally, Congress enacted the LRRA to increase the supply of commercial liability insurance nationwide—not to confer rights on individual RRGs. *See* H. R. Rep. No. 99-865, at 7–8 ("The purpose of [the LRRA] is to facilitate the formation and operation of risk retention groups and purchasing groups.") ("[The] creation of self-insurance groups can provide much-needed new capacity."); *see also Home Warranty Corp. v. Caldwell*, 777 F.2d 1455, 1472 (11th Cir. 1985) (discussing purpose of the Product Liability Risk Retention Act, predecessor to the LRRA). Thus, Congress primarily enacted the LRRA to benefit buyers of insurance, rather than the insurance companies themselves. Preemption of state laws directly effectuated that purpose, because states had "created capital and other requirements that ma[de] it difficult for [RRGs] to form or to operate on a multi-state basis." H. Rep. No. 99–865, at 8. Clearly, RRGs stood to benefit from freedom from some state regulations. However, whatever salutary effect preemption had for individual RRGs was only incidental to the ultimate purpose of increasing the available supply of commercial liability insurance. This sort of incidental benefit does not rise to the level of the "unambiguously conferred" right that *Gonzaga University* requires us to find. *Gonzaga Univ.*, 536 U.S. at 283; *see also Golden State*, 493 U.S. at 109 ("[W]hen congressional pre-emption benefits particular parties only as an incident of the federal scheme of regulation, a private damages remedy under § 1983 may not be available.").

Our analysis of the first *Blessing* factor is sufficient to determine that Congress did not intend to confer an enforceable right on RRGs in the LRRA, so we will not address the remaining two factors. Therefore, we conclude that § 3902(a) of the LRRA does not confer on RRGs a right

to be free from state law that can be enforced under § 1983.**[13]** As a result, the instant litigation ceases to be an "action . . . to enforce a provision of [§ 1983]," eliminating the statutory basis for an award of attorneys' fees. *See* 42 U.S.C. § 1988. Accordingly, we vacate the fee award.

### III.     The district court did not commit reversible error when it ruled on pending motions before the deadline for filing a response had passed.

Finally, we must determine whether the district court committed reversible error when it granted several motions in alleged violation of its own local rule. "The rulings of the district courts regarding local rules are reviewed for abuse of discretion." *Prof'l Programs Grp. v. Dep't of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994). "District judges must adhere to their court's local rules, which have the force of federal law." *In re Corrinet*, 645 F.3d 1141, 1146 (9th Cir. 2011). However, only "a departure from local rules that affects 'substantial rights' requires reversal." *Prof'l Programs Grp.*, 29 F.3d at 1353; Fed. R. Civ. P. 61. Conversely, a departure should not be reversed "if the effect is so slight and unimportant that the sensible treatment is to overlook it." *Id.* (internal quotation marks and alteration omitted).

---

**[13]** Supporting our conclusion, courts have repeatedly declined to recognize that preemption provisions give rise to a non-specific right to be free from state law that can be enforced under § 1983. *E.g.*, *Sprint Telephony PCS, L.P. v. Cnty. of San Diego*, 490 F.3d 700 (9th Cir. 2007) (Telecommunications Act, 47 U.S.C. § 253(a)); *Loyal Tire & Auto Center, Inc. v. Town of Woodsbury*, 445 F.3d 136, 150 (2d Cir. 2006) (Interstate Commerce Act, 49 U.S.C. § 14501(c)(1)); *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 323 (2d Cir. 2005) (National Banking Act, 12 U.S.C. § 21 *et seq.*).

Here, the relevant local rule states, "Unless otherwise ordered by the court, points and authorities in response shall be filed and served by an opposing party fifteen (15) days after service of the motion." D. Nev. R. 7-2(b) (2006). The Commissioner argues that the district court violated this rule when it granted three different motions in this case.

First, we address two motions for leave to submit amicus briefs filed by the NRRA and the Self-Insurance Institute of America on January 31, 2011. The district court granted these motions nine days later, on February 9, 2011, before the Commissioner submitted a response. The district court did not err by ruling on these motions at that time. Under its plain language, Local Rule 7-2(b) does not guarantee parties a period of time to file a response. Rather, it limits the period in which a response may be filed to fifteen days. Moreover, assuming that the district court did violate Local Rule 7-2(b), neither motion raised issues that affected the Commissioner's substantial rights. The Commissioner does not articulate how the admission of two additional *amici* affected the outcome of the district court proceeding; he only argues that he was denied his chance to file an opposition to their admission.

Second, we address ANI's March 21, 2011 motion seeking leave to supplement a previously filed reply. The Commissioner filed a response on March 23, 2011, but the district court granted ANI's motion on March 24, 2011 without acknowledging the Commissioner's response. The Commissioner does not allege how the district court's failure to consider his response affected any substantial rights. Instead, he argues that he was "forced to file a motion asking the District Court to 're-consider' arguments never even considered." However, enduring the process of filing an additional motion does not, by itself, affect the outcome of

the proceeding.  Further, in this instance, the outcome clearly was not affected.  After the district court granted ANI's motion, the Commissioner filed a motion for reconsideration. In that motion, the Commissioner re-submitted the response that the district court allegedly overlooked the first time. Considering the response explicitly when ruling on the motion for reconsideration, the district court reached the same conclusion.  Thus, the district court's failure to consider the Commissioner's response in the first instance did not affect the outcome of ANI's motion, or the litigation.

The district court's errors—if any—did not affect the Commissioner's substantial rights.  Rather, they seem "slight" and "unimportant," and we think the "sensible treatment" is to overlook them.  *Prof'l Programs Grp.*, 29 F.3d at 1353.

## CONCLUSION

The Commissioner's Order, which barred ANI from writing first dollar liability insurance policies in Nevada, is preempted by the LRRA, 15 U.S.C. § 3902(a).  Therefore, we **AFFIRM** the district court's entry of declaratory and injunctive relief.  However, the LRRA does not confer a right to be free from state law that can be enforced under 42 U.S.C. § 1983, making fees under 42 U.S.C. § 1988 unavailable. Therefore, we **VACATE** the fee award.

Finally, we **REMAND** so that the district court can enter a new summary judgment order consistent with this opinion. The parties shall bear their own costs on appeal.  *See* Fed. R. App. P. 39(a)(4).

**AFFIRMED in part, VACATED in part, and REMANDED.**