**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRUCE ANDERSON; JOHN WILSON; ROBERT AUSTIN; CALIFORNIA ADVOCATES FOR NURSING HOME REFORM, *Plaintiffs-Appellants*, | No. 16-16193 |
| | D.C. No. 3:15-cv-05120-HSG |
| v. | OPINION |
| MARK GHALY, Secretary of California Department of Health and Human Services, *Defendant-Appellee*. | |

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam, Jr., District Judge, Presiding

Argued and Submitted September 6, 2018
San Francisco, California

Filed July 18, 2019

Before:  Marsha S. Berzon and Michelle T. Friedland,
Circuit Judges, and Kathleen Cardone,[*] District Judge.

Opinion by Judge Berzon;
Concurrence by Judge Friedland

## SUMMARY[**]

### Civil Rights

The panel vacated the district court's dismissal with prejudice of a complaint in an action brought pursuant to 42 U.S.C. § 1983 by three former nursing home residents and a nonprofit advocacy group who alleged that the residents were subjected to unlawful "dumping," the practice of sending a nursing home resident to a hospital for medical or mental health treatment but refusing to readmit the resident after discharge from the hospital.

Using the appeals process established by the State of California, all three residents challenged their respective nursing homes' refusal to readmit them after their hospitalizations, and all three prevailed.  None, however, was readmitted.  The residents brought a § 1983 action, asserting that provisions in the Federal Nursing Home Reform Amendments, which imposed various requirements for nursing homes to be reimbursed under Medicaid, created

---

[*] The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

a private statutory right enforceable under § 1983. The district court determined that the residents had no private right enforceable through § 1983 and dismissed the complaint.

Applying the factors set forth in *Blessing v. Freestone*, 520 U.S. 329, 340 (1997), the panel held that the Federal Nursing Home Reform Amendments' provisions requiring states to "provide for a fair mechanism . . . for hearing appeals on transfers and discharges of residents," 42 U.S.C. § 1396r(e)(3), created a statutory right enforceable under § 1983. This right includes within it the opportunity for redress after a favorable appeal decision. The panel further concluded, however, that the residents' complaint did not plausibly allege a violation of that right because the complaint did not allege that the State provided no mechanism whatsoever to enforce each administrative appeal order regarding nursing home transfers and discharges. The panel held that the residents' failure to state a claim could perhaps be cured by repleading. The panel therefore vacated the district court's dismissal with prejudice of the complaint and remanded for further proceedings consistent with its opinion.

Concurring in the judgment, Judge Friedland stated that she agreed that the residents' complaint did not state a claim even assuming that the Federal Nursing Home Reform Amendments created an individual enforceable right to redress of an appeal decision under 42 U.S.C. § 1983. Accordingly, Judge Friedland stated that she would not have reached the more difficult questions addressed in the panel's opinion.

**COUNSEL**

Matthew Borden (argued) and J. Noah Hagey, Braunhagey & Borden LLP, San Francisco, California, for Plaintiffs-Appellants.

Hadara R. Stanton (argued), Deputy Attorney General; Xavier Becerra, Attorney General of California; Julie Weng-Gutierrez, Senior Assistant Attorney General; Susan M. Carson, Supervising Deputy Attorney General; Office of the California Attorney General, San Francisco, California; for Defendant-Appellee.

Mark E. Reagan, Scott J. Kiepen, and Katrina A. Pagonis, Hooper, Lundy & Bookman, P.C., San Francisco, California, for Amicus Curiae California Association of Health Facilities.

## OPINION

BERZON, Circuit Judge:

The Medicaid Act requires that states participating in Medicaid "provide for a fair mechanism . . . for hearing appeals on transfers and discharges of residents" of nursing homes covered by Medicaid. 42 U.S.C. § 1396r(e)(3). The question in this case is whether nursing home residents may challenge a state's violation of this statutory requirement under 42 U.S.C. § 1983. We hold that they may.

### I

### A

Medicaid is a cooperative federal-state program designed to "enabl[e] each State . . . to furnish . . . medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396-1; *see also Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990). Among those services is treatment at "nursing facilities," also known as nursing homes or long-term care facilities. *See* 42 U.S.C. § 1396d(a).

In 1982, at the urging of Congress, the Health Care Financing Administration, a subdivision of the Department of Health and Human Services and the predecessor to the Centers for Medicare and Medicaid Services (CMS), commissioned a study to review the regulation of nursing homes participating in Medicare and Medicaid. H.R. Rep. No. 100-391, pt. 1, at 451–52 (1987), *as reprinted in* 1987 U.S.C.C.A.N. 2313-1, 2313-271 to -272. The ensuing study, published in 1986, concluded that "[t]here is broad

consensus that government regulation of nursing homes, as it now functions, is not satisfactory because it allows too many marginal or substandard nursing homes to continue in operation." Comm. on Nursing Home Regulation, Inst. of Med., *Improving the Quality of Care in Nursing Homes* 2 (1986). To address these issues, the study offered a series of recommendations to strengthen the regulation of nursing homes. *See id.* at 25.

In response, Congress amended the Medicare and Medicaid Acts "to improve the quality of care for Medicaid-eligible nursing home residents," adopting many of the study's recommendations. H.R. Rep. No. 100-391, pt. 1, at 452. Enacted as part of the Omnibus Budget Reconciliation Act of 1987, Pub L. No. 100-203, 101 Stat. 1330, the resulting amendments, the Federal Nursing Home Reform Amendments (FNHRA), imposed various requirements as a prerequisite for nursing homes to be reimbursed under Medicaid. Those requirements are codified at 42 U.S.C. § 1396r. *See Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel*, 570 F.3d 520, 523 n.1 (3d Cir. 2009).[1]

Among FNHRA's provisions are standards for residents' "[t]ransfer and discharge rights." 42 U.S.C. § 1396r(c)(2). Those standards require that "[a] nursing facility must permit each resident to remain in the facility and must not transfer or discharge the resident from the facility unless" one of six circumstances applies:

---

[1] Medicare, the federally funded counterpart to Medicaid that provides health insurance to older and disabled individuals, also provides coverage for nursing home services. *See* 42 U.S.C. § 1395d(a). FNHRA also amended the Medicare Act with substantially identical provisions. *See id.* § 1395i-3.

(i)     the transfer or discharge is necessary to meet the resident's welfare and the resident's welfare cannot be met in the facility;

(ii)    the transfer or discharge is appropriate because the resident's health has improved sufficiently so the resident no longer needs the services provided by the facility;

(iii)   the safety of individuals in the facility is endangered;

(iv)    the health of individuals in the facility would otherwise be endangered;

(v)     the resident has failed, after reasonable and appropriate notice, to pay . . . for a stay at the facility; or

(vi)    the facility ceases to operate.

*Id.* § 1396r(c)(2)(A).

If a nursing home does seek to transfer or discharge a resident, it must first provide notice to the resident. *Id.* § 1396r(c)(2)(B). That notice must, among other required information, inform the resident of her "right to appeal the transfer or discharge under the State process established under subsection (e)(3) of this section." *Id.* § 1396r(c)(2)(B)(iii)(I).

Subsection (e)(3), in turn, sets forth specific requirements for the state-established appeals process:

> The State, for transfers and discharges from nursing facilities effected on or after October 1, 1989, must provide for a fair mechanism, meeting the guidelines established under subsection (f)(3) of this section, for hearing appeals on transfers and discharges of residents of such facilities; but the failure of the Secretary to establish such guidelines under such subsection shall not relieve any State of its responsibility under this paragraph.

*Id.* § 1396r(e)(3).

The phrase "guidelines established under subsection (f)(3)" refers to another FNHRA provision instructing the Secretary of Health and Human Services to "establish guidelines for minimum standards which State appeals processes under subsection (e)(3) . . . must meet." *Id.* § 1396r(f)(3). In accordance with that instruction, CMS has promulgated a series of regulations fleshing out the requirements for the state-established appeals process. *See* 42 C.F.R. §§ 431.200–.246. Those regulations provide that the state "must grant an opportunity for a hearing to . . . [a]ny resident who requests it because he or she believes a skilled nursing facility or nursing facility has erroneously determined that he or she must be transferred or discharged." *Id.* § 431.220(a). The regulations also set forth procedural requirements for the hearing itself. *See id.* §§ 431.240–.243. And, ultimately, if "[t]he hearing decision is favorable to the applicant or beneficiary," the regulations provide that the state "must . . . , if appropriate, provide for admission or readmission of an individual to a facility." *Id.* § 431.246.

**B**

California's implementation of Medicaid is known as the California Medical Assistance Program, or Medi-Cal. *See* Cal. Welf. & Inst. Code §§ 14000.4, 14063. The Medi-Cal program provides for appeals on transfer and discharge decisions, as required by FNHRA. Nursing home residents who believe they are being or have been erroneously transferred or discharged may appeal the nursing home's decision to the California Department of Health Care Services (DHCS). *See* Cal. Health & Safety Code § 100171. In addition, if the resident "has been hospitalized . . . and asserts his or her rights to readmission . . . and the facility refuses to readmit him or her, the resident may appeal the facility's refusal." *Id.* § 1599.1(h)(1). "The refusal . . . shall be treated as if it were an involuntary transfer under federal law, and the rights and procedures that apply to appeals of transfers and discharges of nursing facility residents shall apply to the resident's appeal under this subdivision." *Id.* § 1599.1(h)(2). A DHCS hearing decision may be appealed by either party via a writ of administrative mandamus to a state superior court; after a successful appeal, the superior court may order DHCS to vacate the hearing decision. *See* Cal. Civ. Proc. Code § 1094.5(f); *see also St. John of God Ret. & Care Ctr. v. State Dep't of Health Care Servs.*, 2 Cal. App. 5th 638, 647 (Ct. App. 2016). There is, however, no provision allowing the superior court in the mandamus proceeding to order compliance with the decision.

California law also provides a private right of action for "[a] current or former resident or patient of a skilled nursing facility . . . against the licensee of a facility who violates any rights of the resident or patient as set forth in the Patients Bill of Rights . . . or any other right provided for by federal or state law or regulation." Cal. Health & Safety Code

§ 1430(b). Under this section, a nursing home resident may seek up to $500 in damages for each violation, injunctive relief, and attorney's fees and costs. *Id.*; *see also Jarman v. HCR ManorCare, Inc.*, 9 Cal. App. 5th 807, 811 (Ct. App. 2017) (holding that, under section 1430, "a plaintiff would be entitled to a measure of damages for each cause of action asserted under the statute" (emphasis omitted)).

## C

The individual plaintiffs in this case—Bruce Anderson, John Wilson, and Robert Austin ("the Residents")—are former residents of certified nursing homes in California. Each alleges that he was subject to "dumping," the practice of sending a resident to a hospital for medical or mental health treatment but refusing to readmit the resident after discharge from the hospital. The Residents maintain that because Medi-Cal provides less compensation than Medicare or private insurance, nursing homes have a strong financial incentive to engage in dumping if Medi-Cal is paying for the resident's stay. "Dumping," the Residents allege, is "one of the biggest problems" nursing home residents in California face.

Using the appeals process established by the State, all three Residents challenged their respective nursing homes' refusal to readmit them after their hospitalization, and all three prevailed. None, however, has been readmitted. Each Resident's respective nursing home continues to refuse readmission, and, Plaintiffs allege, both DHCS and the California Department of Public Health (CDPH) have taken the position that the agencies are not obligated to enforce decisions resulting from the appeals process.

In October 2015, the California Advocates for Nursing Home Reform (CANHR), a nonprofit advocacy group, sent

a letter to DHCS requesting that the agency enforce its decision in resident Bruce Anderson's appeal. In response, DHCS reiterated that it "ha[d] no authority to enforce its own orders," but noted that it was "looking at the issue." About a month later, CANHR met with Diana Dooley, then Secretary for the California Department of Health and Human Services, and "requested her to make the agencies over which she ha[d] oversight follow the law." Although "Secretary Dooley represented that the State was 'doing something' to fix the problem," nothing concrete came out of that meeting. CANHR then wrote a letter to Secretary Dooley notifying her that, "absent immediate relief from the State," it would file suit. The State responded, "listing various enforcement actions it could take," but none of those actions "involved enforcing DHCS readmission hearing orders."

Unsatisfied, CANHR, joined by the three individual residents, filed an action under 42 U.S.C. § 1983 against Secretary Dooley in her official capacity.[2] The complaint stated that FNHRA creates a federal right to "a fair mechanism . . . for hearing appeals on transfers and discharges of residents." 42 U.S.C. § 1396r(e)(3). According to the Residents, because "there is no agency in California that enforces DHCS readmission orders . . . , the State has not provided residents with their right to an administrative procedure that provides for prompt readmission if they are successful." The Residents sought declaratory and injunctive relief. California moved to dismiss the complaint, arguing that the FNHRA provision was not enforceable under § 1983. The district court agreed, concluding that the residents "have no private federal right enforceable through

---

[2] Mark Ghaly has since been appointed Secretary, and has been substituted as the new appellee. *See* Fed. R. App. P. 43(c)(2).

§ 1983." *Anderson v. Dooley*, No. 15-CV-05120-HSG, 2016 WL 3162167, at *2 (N.D. Cal. June 7, 2016).

This appeal followed.

## II

Under 42 U.S.C. § 1983, plaintiffs may sue state actors for "violations of federal statutory as well as constitutional law." *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980); *see also Ball v. Rodgers*, 492 F.3d 1094, 1103 (9th Cir. 2007). To do so, "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). Under the *Blessing* test, "a particular statutory provision gives rise to a federal right" if three requirements are met: (1) "Congress must have intended that the provision in question benefit the plaintiff," (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence," and (3) "the statute must unambiguously impose a binding obligation on the States." *Id.* at 340–41 (quoting *Wright v. City of Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 431 (1987)).[3]

Here, the Residents assert that FNHRA's provisions requiring states to "provide for a fair mechanism . . . for hearing appeals on transfers and discharges of residents," 42

---

[3] We note that these requirements have been applied to "federal statutes enacted pursuant to the Constitution's Spending Clause." *Ball*, 492 F.3d at 1104 n.15. It remains unclear "[w]hether the same degree of statutory clarity in creating rights enforceable under § 1983 is necessary outside of the Spending Clause context." *Id.* Because the Medicaid Act (as amended by FNHRA) is a Spending Clause statute, we apply the test as set forth in *Blessing*.

U.S.C. § 1396r(e)(3), create a statutory right enforceable under § 1983. This right, the Residents maintain, includes the appropriate redress after a favorable appeal decision. We consider this claim against the *Blessing* factors.

## A

Under the first prong of the *Blessing* test, we "must . . . determine whether Congress intended to create a federal right." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (emphasis omitted). "[E]vidence of such intent can be found in the statute's language as well as in its overarching structure." *Ball*, 492 F.3d at 1105. Specifically, a statute's "text must be 'phrased in terms of the persons benefited'" with "rights-creating terms." *Gonzaga*, 536 U.S. at 284 (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 692 n.13 (1979)).

Here, the district court concluded that Congress did not intend to create a statutory right, reasoning that, "[r]ather than phrasing the subsections to focus on the nursing home residents who inevitably benefit from the FNHRA," the provisions at issue "'unmistakably focus' on duties imposed on the subjects of the statutes—the state and the secretary, respectively." *Anderson*, 2016 WL 3162167, at *3. The district court effectively held that, because FNHRA's provisions regarding the appeals process were phrased as a directive to the state, they could not create an enforceable right under § 1983. *See id.* We cannot agree.

To begin, the district court's conclusion disregards the statutory text. Far from mentioning "residents" only "in passing," as the district court stated, *id.* at *4, FNHRA directly focuses on them in discussing the appeals process for transfers and discharges, using "rights-creating terms," *Gonzaga*, 536 U.S. at 284. FNHRA's notice requirements—

listed under a subsection titled "[t]ransfer and discharge *rights*," 42 U.S.C. § 1396r(c)(2) (emphasis added)—instruct that nursing homes must provide notice to residents before attempting to transfer or discharge them. *Id.* § 1396r(c)(2)(B). That notice, in turn, must specifically inform residents of their "*right to appeal* the transfer or discharge under the State process established under subsection (e)(3) of this section." *Id.* § 1396r(c)(2)(B)(iii)(I) (emphasis added). Thus, FNHRA expressly states that the appeals process, mandated by FNHRA as a condition of federal funding, provides residents with a *right* to use that process, as well as notice of that right.

Moreover, the district court's underlying reason for its conclusion—that a statute cannot create rights when phrased as a directive to the state—is wrong. It has never been a requirement that a statute focus *solely* on individuals, to the exclusion of all others, to demonstrate congressional intent to create a statutory right. To the contrary, cooperative federalism programs like Medicaid, under which "Congress provides funds to the states on the condition that the state spend the funds in accordance with federal priorities," Roderick M. Hills, Jr., *The Political Economy of Cooperative Federalism: Why State Autonomy Makes Sense and "Dual Sovereignty" Doesn't*, 96 Mich. L. Rev. 813, 859 (1998), are necessarily phrased as a set of directives to states that wish to receive federal funding.

Given the conditional nature of these programs, the statutes enacting them will nearly always be phrased with a partial focus on the state. Although some of these provisions are broadly structural, *see, e.g.*, *Blessing*, 520 U.S. at 343, others specify that, to qualify for funding, the state must accord enunciated rights to the program's beneficiaries, *see, e.g.*, *Wilder*, 496 U.S. at 510. Insofar as the federal statute

contains "rights-creating" language "phrased in terms of the persons benefited," *Gonzaga*, 536 U.S. at 284 (quoting *Cannon*, 441 U.S. at 692 n.13), it falls into the latter category—a statute for which recognizing and enforcing individual beneficiaries' rights is a condition for federal funding of the state program. And where a right so created is at stake, the right is enforceable under § 1983. *See Wilder*, 496 U.S. at 510.

Two cases in which we concluded that certain provisions of the Medicaid Act created rights enforceable under § 1983 confirm that the district court's dichotomy—between the creation of individual rights in a Spending Clause statute and directives to the states seeking to qualify for funding, *see Anderson*, 2016 WL 3162167, at *4—is a false one.

The first, *Watson v. Weeks*, 436 F.3d 1152 (9th Cir. 2006), involved a provision of the Medicaid Act requiring that certain types of care and services be available under state Medicaid plans. *Id.* at 1159. Notably, the provision was phrased as a directive to the state, requiring that "[a] *State plan* for medical assistance . . . provide . . . for making medical assistance available" to eligible individuals. 42 U.S.C. § 1396a(a)(10)(A) (emphasis added). Even though the phrasing concerned a "State plan," *Watson* held that this provision "create[d] a right enforceable by section 1983," noting that the language of the statute was "unmistakably focused on the specific individuals benefited." 436 F.3d at 1160.

The second case, *Ball v. Rodgers*, considered Medicaid's waiver program for home- and community-based services, under which states could "be reimbursed for providing beneficiaries with noninstitutional care, so long as the cost of providing this care is less than or equal to the cost of caring for the same beneficiaries in more traditional long-

term institutions." 492 F.3d at 1107. The statute establishing the waiver program included "free choice provisions," requiring that, as a prerequisite to approval of a waiver program, a state provide "assurances" that beneficiaries of the waiver program be "informed of the feasible alternatives." *Id.* (emphasis omitted) (quoting 42 U.S.C. § 1396n(c)(2)(C)). *Ball* held that the requirement that the state make these assurances to individuals created a right in the covered *individuals*, enforceable under § 1983. *Id.*

Here, the provisions establishing the appeals process, § 1396r(e)(3) and § 1396r(f)(3), are directives to the state and federal Secretary of Health and Human Services, respectively. But with respect to the substance of those directives, the statute contains express "rights-creating terms," *Gonzaga*, 536 U.S. at 284 (quoting *Cannon*, 441 U.S. at 692 n.13), regarding individuals' "[t]ransfer and discharge rights" generally and the "right to appeal" particularly, 42 U.S.C. § 1396r(c)(2), (c)(2)(B)(iii)(I). We hold that, in delineating the requirements that states provide for an appeals process, Congress created a right benefiting nursing home residents, including the Residents here. The district court erred in concluding otherwise.

**B**

California does not defend the district court's conclusion that FNHRA created no individual right to appeal a nursing home transfer or discharge. Instead, the State maintains that any such right does not include any state implementation of the decision reached on appeal. At bottom, the State's position is that the FNHRA provides only the right to the hearing decision itself. That decision, according to the State, need not have any real-world effect. The statute's text, structure, implementing regulations, and overall purpose

lead us to conclude otherwise. The right to an appeal under FNHRA, we hold, includes within it provision for some state-provided process capable of providing relief.

**1**

First, the text: Again, FNHRA requires states to "provide for a fair mechanism . . . for hearing appeals on transfers and discharges of residents." 42 U.S.C. § 1396r(e)(3). The statute further specifies that this provision vests residents with the "right to appeal the transfer or discharge under the State process established under subsection (e)(3) of this section." *Id.* § 1396r(c)(2)(B)(iii)(I).

An "appeal" in legal parlance ordinarily refers to a process by which an earlier action—here, the transfer or discharge of a resident—can be challenged and, if the facts establish that the decision to take that action was invalid, overturned. *See Appeal*, *Black's Law Dictionary* (10th ed. 2014) ("A proceeding undertaken *to have a decision reconsidered* by a higher authority." (emphasis added)); *Appeal*, *Oxford English Dictionary* (2d ed. 1989) ("The transference of a case from an inferior to a higher court or tribunal, *in the hope of reversing or modifying the decision of the former*." (emphasis added)). Implicit in these definitions is the understanding that a successful appeal will have some actual effect on the challenged action, here a transfer or discharge. An appeal lacking the practical capacity to reverse or modify the prior decision is but "an arid ritual of meaningless form." *Staub v. City of Baxley*, 355 U.S. 313, 320 (1958). So the statutory use of the term "appeal" encompasses the issuance of an enforceable order to redress an invalid original decision.

That conclusion is bolstered by the structure of FNHRA. FNHRA prohibits nursing homes from transferring or

discharging residents except in six narrow circumstances, setting forth specific grounds for invalidating a nursing home's transfer or discharge decision on appeal. *Id.* § 1396r(c)(2)(A). The statute also provides comprehensive safeguards for ensuring that each resident's right to an appeal will be protected. Before undertaking a transfer or discharge of a resident, a nursing home must "notify the resident (and, if known, an immediate family member of the resident or legal representative) of the transfer or discharge and the reasons therefor." *Id.* § 1396r(c)(2)(B)(i)(I). FNHRA further requires a nursing home to "record the reasons" for each transfer or discharge "in the resident's clinical record" so that a record of the nursing home's decision is available for review. *Id.* § 1396r(c)(2)(B)(i)(II). Providing such extensive procedural protections for each resident's right to appeal would be entirely pointless if that right resulted in a purely advisory opinion, not including any possibility of reversing the action challenged.

Moreover, FNHRA expressly equips states with tools for enforcing the nursing home standards imposed by the statute. FNHRA provides that a state may terminate a nursing home's participation in Medicaid if the state finds that the nursing home fails to comply with FNHRA's standards. *Id.* § 1396r(h)(1). FNHRA also requires states to "establish by law (whether statute or regulation)" a number of remedies against noncompliant nursing homes, including the denial of Medicaid reimbursements, civil monetary penalties, the appointment of temporary management, and the closure of nursing homes. *Id.* § 1396r(h)(2)(A). FNHRA therefore suggests possible sanctions available to the states if a nursing home does not comply with a directive to readmit a discharged or transferred resident.

Our conclusion that the right to appeal includes the ability to obtain relief accords with the overall purpose of FNHRA. FNHRA was enacted to address a "broad consensus that government regulation of nursing homes, as it now functions, is not satisfactory because it allows too many marginal or substandard nursing homes to continue in operation." Comm. on Nursing Home Regulation, *supra*, at 2. Congress was "deeply troubled that the Federal government, through the Medicaid program, continues to pay nursing facilities for providing poor quality care to vulnerable elderly and disabled beneficiaries." H.R. Rep. No. 100-391, pt. 1, at 452. In light of this focus on inadequate nursing homes, Congress could not have intended FNHRA to create meaningless show trials that allow nursing homes to persist in improper transfers and discharges.

**2**

FNHRA directs states to "establish guidelines for minimum standards which State appeals processes . . . must meet," 42 U.S.C. § 1396r(f)(3), but also provides that "the failure of the Secretary to establish . . . guidelines . . . shall not relieve any State of its responsibility under this paragraph," *id.* § 1396r(e)(3). Given the statutory language and structure, that "responsibility" includes provision for redressing an invalid transfer or discharge decision.

The Secretary did, however, follow FNHRA's directive to "establish guidelines for minimum standards which State appeals processes . . . must meet." *Id.* § 1396r(f)(3). Via notice-and-comment rulemaking, CMS promulgated regulations providing that a state participating in Medicaid "must grant an opportunity for a hearing to . . . [a]ny resident who requests it because he or she believes a skilled nursing facility or nursing facility has erroneously determined that he or she must be transferred or discharged." 42 C.F.R.

§ 431.220(a)(2). The regulations further provide that, if "[t]he hearing decision is favorable to the applicant or beneficiary," the state "must . . . , if appropriate, provide for admission or readmission of an individual to a facility." *Id.* § 431.246.

"As an agency interpretation of a statute, a regulation may be relevant in determining the scope of the right conferred by Congress." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 943 (9th Cir. 2003) (emphasis added). That principle has particular force here, as FNHRA expressly prescribes compliance with the CMS guidelines regarding the appeal process. *See* 42 U.S.C. § 1396r(e)(3).[4]

CMS's determination that states "*must . . .* , if appropriate, provide for admission or readmission to a facility if . . . the hearing decision is favorable to the applicant or beneficiary," 42 C.F.R. § 431.246(a), is fully consistent with the understanding of the right to "appeal" we have derived from the statutory language and context—that the right to an appeal to which there is a right under FNHRA includes an enforceable order overturning an invalid discharge or transfer.[5]

---

[4] *Save Our Valley* also held that "agency regulations cannot independently create rights enforceable through § 1983." 335 F.3d at 939. In accord with that holding, we have focused our rights analysis on the statute, turning to the regulation only as one factor supporting of our interpretation.

[5] In response to an inquiry from CDPH "requesting guidance . . . regarding whether State Survey Agencies are responsible for enforcing Transfer/Discharge Appeal (TDA) and Refusal to Readmit (RTR) hearing decisions," CMS reiterated this position in an opinion letter,

**3**

The Second Circuit has reached the same conclusion regarding the scope of a similar statutory right under the Medicaid Act based on the same regulation here applicable, 42 C.F.R. § 431.246. In *Catanzano ex rel. Catanzano v. Wing*, 103 F.3d 223 (2d Cir. 1996), plaintiffs sued to enforce the Medicaid Act's requirement that states "'provide for granting an opportunity for a fair hearing' whenever an applicant's requested services are denied." *Id.* at 227 (quoting 42 U.S.C. § 1396a(a)(3)). Considering the plaintiffs' challenge, the Second Circuit noted that "the results of such hearings will be binding on the state," citing § 431.246. *Id.* at 228 (citing 42 C.F.R. § 431.246); *see also Shakhnes v. Berlin*, 689 F.3d 244, 258 (2d Cir. 2012) (reaffirming that Medicaid hearing decisions are binding based on § 431.246).[6] "[T]he statutory right to a fair hearing," *Catanzano* explained, "must include within it the right to effective redress." 103 F.3d at 249 (quoting *Greenstein v. Bane*, 833 F. Supp. 1054, 1077 (S.D.N.Y. 1993)).

\*       \*       \*

We hold, with regard to *Blessing*'s first, rights-creating prong, that FNHRA's recognition of an individual right to "a fair mechanism . . . for hearing appeals on transfers and discharges," 42 U.S.C. § 1396r(e)(3), includes within it the opportunity for redress.

---

noting that "CMS regulations are clear that the State Agency must promptly make corrective actions."

[6] That regulation, § 431.246, also implemented the fair hearing provision at issue in *Catanzano*. *See* 42 C.F.R. § 431.200(a), (c).

# C

The second prong of the *Blessing* test requires that "the plaintiff . . . demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence." 520 U.S. at 340–41 (quoting *Wright*, 479 U.S. at 431). The right to an appeal provided by FNHRA, including the opportunity for state enforcement of the order issued by the appellate body, meets that requirement.

"[A] federal right to a fair hearing" is "an objective individual and judicially reviewable right." *ASW v. Oregon*, 424 F.3d 970, 978 (9th Cir. 2005). FNHRA provides six specific criteria for which a transfer or a discharge is permissible, *see* 42 U.S.C. § 1396r(c)(2)(A), thereby making the substance of an appeals decision quite amenable to judicial consideration.

The opportunity for potential redress contained within the right to an appeal is also well within the judicial enforcement competence. As CMS's regulation indicates, enforcement of the appeal begins with an order to the nursing home to admit or readmit transferred or discharged residents. *See* 42 C.F.R. § 431.246. In fact, DHCS already provides such orders—the individual residents in this case received appeals decisions invaliding their nursing homes' transfer or discharge decisions and ordering readmission. And, as noted, FNHRA contains within it specific sanctions states can apply to noncompliant nursing homes; no judicial invention is needed.[7]

---

[7] Alternatively, the state may choose to provide other forms of redress against noncompliant nursing homes—for example, allowing

That the CMS regulation implementing the appeals process, 42 C.F.R. § 431.246, provides for redress "if appropriate" does not render the redress requirement too vague and amorphous for judicial enforcement. Again, our conclusion that the right to an appeal includes the opportunity for redress is an interpretation of FNHRA's text, not its implementing regulations. Given that interpretation, we understand "if appropriate" in § 431.246, consistently with our interpretation of the statute, to require "admission or readmission" if (1) the hearing decision so requires and (2) there is no practical impediment to enforcement. As to (1), a hearing decision can be favorable to a challenger but not order admission or readmission. *See, e.g.*, *St. John*, 2 Cal. App. 5th at 642–43, 646 (holding that a nursing home erred in refusing to readmit a resident but concluding that "the order to offer readmittance can provide no effective relief, because [the resident] will not accept readmittance"). As to (2), an admission order may as a practical matter become unenforceable because, for example, the resident has passed away or no longer needs nursing home care, or the nursing home has closed. But where (1) and (2) obtain, as a statutory matter, redress is, in the language used in the regulation, "appropriate," and the state must in some manner assure it. *See Appropriate*, *Oxford English Dictionary* (2d ed. 1989) ("Specially fitted or suitable, proper.").

Finally, under the third prong of the *Blessing* test, we ask whether "the statute . . . unambiguously impose[s] a binding obligation on the States." 520 U.S. at 341. Here, the statute

---

lawsuits against the facilities to enforce appeal orders. At this stage of the proceedings we are determining only whether the appeal requirement, including the opportunity for redress, meets the *Blessing* requirements for stating a § 1983 claim, not whether any particular form of redress complies with the statute.

could not be clearer: "The *State . . . must provide* for a fair mechanism . . . for hearing appeals on transfers and discharges . . . ." 42 U.S.C. § 1396r(e)(3) (emphasis added). This provision is "worded in mandatory, not precatory terms; it obviously sets out specific requirements" for the state. *Watson*, 436 F.3d at 1161. Thus, the final prong of the *Blessing* test is satisfied.

## III

"Even if a plaintiff demonstrates that a federal statute creates an individual right, there is only a rebuttable presumption that the right is enforceable under § 1983." *Blessing*, 520 U.S. at 341; *see also Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981). That presumption can be overcome "if Congress 'specifically foreclosed a remedy under § 1983.'" *Blessing*, 520 U.S. at 341 (quoting *Smith*, 468 U.S. at 1005 n.9). "Congress may do so expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.*

We "do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right." *Wilder*, 496 U.S. at 523 (quoting *Wright*, 479 U.S. at 423–24). For such a conclusion to be warranted, "the remedial mechanisms provided" must be "sufficiently comprehensive and effective to raise a clear inference that Congress intended to foreclose a § 1983 cause of action for the enforcement of [the plaintiffs'] rights secured by federal law." *Wright*, 479 U.S. at 425.

Here, California contends that we should conclude that Congress has impliedly foreclosed enforcement FNHRA's right to an appeal under § 1983 because state and federal law

already provide remedies for a nursing home's failure to comply with readmission orders. These remedies do not satisfy the "difficult showing" required to demonstrate an implied foreclosure of a § 1983 remedy. *Blessing*, 520 U.S. at 346.

First, implied foreclosure is a question of congressional intent. *See Sea Clammers*, 453 U.S. at 20. State law remedies therefore cannot, as a general matter, imply the unavailability of a § 1983 remedy. *See Wilder*, 496 U.S. at 523. Congress is unlikely to be aware of such remedies, which will vary from state to state and may not exist in some states. Here, the diverse remedies for improper nursing home transfers or discharges offered by California law—private suits against the nursing homes, investigations by state agencies, and enforcement actions by the California Attorney General—cannot speak to whether *Congress* intended to foreclose enforcement under § 1983 of the FNHRA right to appeal nursing home transfers and discharges.

The federal law remedies on which California relies fare no better. The State notes that FNHRA itself requires that "each State establish by law" certain remedies against noncompliant nursing homes. *See* 42 U.S.C. § 1396r(h)(1), (h)(2)(A). Those remedies, California contends, should impliedly foreclose the availability of a § 1983 remedy. Not so.

The remedies California posits pertain to "enforcing facilities' compliance" with FNHRA. But the Residents are not suing under § 1983 to enforce a right to readmission *against the nursing homes*. Instead, the Residents seek to use § 1983 to enforce *against the state* the statutory right to an appeal. Thus, these federal provisions for compelling nursing home compliance do not independently provide

redress for the right the plaintiffs allege has been violated here—the FNHRA provision for a right to an appeal that includes some form of state implementation of a favorable decision. Instead, as we have explained, the availability to the states of statutory remedies to compel nursing home compliance reinforces our conclusion that the right to an appeal under FNHRA includes the opportunity for state implementation of an order issued on appeal. *See supra* pp. 19–20.

The only remedy on which California relies directed at the State's appeals process is the federal government's approval process for state Medicaid plans, and its concomitant ability to withhold federal funds. This type of remedy alone is insufficient to foreclose impliedly a § 1983 remedy where a federal Spending Clause statute has created a right in individual beneficiaries. *See Blessing*, 520 U.S. at 347–48; *Ball*, 492 F.3d at 1117.

In sum, we have not been presented with any indication, express or implied, that Congress intended to foreclose a § 1983 remedy for enforcement of the right to an appeal under FNHRA, a right that includes the opportunity for some form of state enforcement of the result of the appeal.

## IV

Although we conclude that FNHRA provides the Residents with a statutory right to an appeal—a right that includes state implementation of the decision on appeal—we do not believe that the Residents' present complaint plausibly alleges a violation of that right. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Here, the Residents' complaint alleges only that state *agencies*—namely, DHCS and CDPH—refuse to enforce

favorable hearing decisions. The complaint specifically states that FNHRA's right to an appeal is violated because "there is no agency in California that enforces DHCS readmission orders" and that "the State has not provided residents with their right to an administrative procedure that provides for prompt readmission" after a favorable hearing decision.

But we do not find in § 1396r(e)(3) the requirement that California implement hearing decisions directly through a state agency. We do not address what specific forms of redress would be necessary to comply with this provision. *See supra* note 7. That question "speaks to what constitutes a *substantive* violation of [the statute], an issue we do not address." *Ball*, 492 F.3d at 1116; *see also Gomez-Perez v. Potter*, 553 U.S. 474, 483 (2008) (cautioning against "improperly conflat[ing] the question whether a statute confers a private right . . . with the question whether the statute's substantive prohibition reaches a particular form of conduct"). At a minimum, however, we recognize that § 1396r(e)(3) does not limit the state-provided enforcement mechanism to direct agency enforcement by the State.

California could, for example, provide that state courts will enforce DHCS hearing decisions through the private cause of action provided by section 1430 of the California Health and Safety Code. *See* Cal. Health & Safety Code § 1430(b). We note that, "[u]nder California law, a prior administrative proceeding, if upheld on review (or not reviewed at all), will be binding in later civil actions to the same extent as a state court decision if 'the administrative proceeding possessed the requisite judicial character.'" *White v. City of Pasadena*, 671 F.3d 918, 927 (9th Cir. 2012) (quoting *Runyon v. Bd. of Trs. of Cal. State Univ.*, 48 Cal. 4th 760, 773 (2010)). The complaint does not allege that this

aspect of California law is insufficient to ensure the right to an appeal provided by FNHRA.**[8]** Nor does it allege with any specificity why the administrative remedies provided by California law are unavailable to enforce a favorable order after an appeal that a specific resident be readmitted to a nursing facility. *See* Cal. Health & Safety Code § 1423(a) (requiring that if a violation is confirmed, CDPH either "[r]ecommend the imposition of a federal enforcement remedy or remedies on a nursing facility in accordance with federal law" or "[i]ssue a citation pursuant to state licensing laws, and if the facility is a nursing facility, may recommend the imposition of a federal enforcement remedy").

In short, the complaint as it currently exists does not allege that the State provides no mechanism whatsoever to enforce each administrative appeal order regarding nursing home transfers and discharges. Because the Residents have not so alleged, their complaint does not provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## V

Here, the district court dismissed the Residents' complaint with prejudice, concluding that FNHRA does not provide a statutory right enforceable under § 1983. For the reasons discussed above, that conclusion was wrong.

---

**[8]** The Residents suggest that some California courts have not regarded DHCS decisions are preclusive. The present complaint, however, does not address the sufficiency of enforcement in state court proceedings.

As noted, the present complaint does not allege a plausible violation of the FNHRA appeals provision as we have construed it. But "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). The Residents' failure to state a claim can perhaps be cured by repleading. We therefore vacate the district court's dismissal of the Residents' complaint and remand for further proceedings consistent with this opinion.

**VACATED and REMANDED.**

FRIEDLAND, Circuit Judge, concurring in the judgment:

I concur in the judgment. For the reasons in Part IV of the majority opinion, I agree that the Residents' Complaint does not state a claim. Because that is true even assuming that FNHRA creates an individual right to redress of an appeal decision and that such a right is enforceable under 42 U.S.C. § 1983, and because we do not need to decide more than what is decided in Part IV to resolve this appeal, I would not reach the more difficult questions discussed in Parts II and III.