**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DELORES POLK; SCOTT UNGAR;
HEATHER HERRICK; LIEN LOI;
JOLENE MONTOYA; PETER LOI;
SUSAN MCKAY, as individuals and
representatives of the requested
class,

No. 20-17095

D.C. No.
2:18-cv-02900-
KJM-KJN

*Plaintiffs-Appellants,*

v.

BETTY YEE, in her official capacity
as State Controller of California;
SERVICE EMPLOYEES
INTERNATIONAL UNION LOCAL 2015,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

| | |
|---|---|
| ALICIA QUIRARTE, *Plaintiff*, | No. 20-55266 |
| | D.C. No. 3:19-cv-01287-CAB-KSC |
| and | |
| NORA MAYA, an individual; ANH LE, an individual; VIET LE, an individual; JOSE DIAZ, an individual, *Plaintiffs-Appellants*, | OPINION |
| v. | |
| UNITED DOMESTIC WORKERS OF AMERICA, AFSCME LOCAL 3930, a labor organization; BETTY T. YEE, in her official capacity as State Controller of the State of California, *Defendants-Appellees*, | |
| ROB BONTA,* in his official capacity as Attorney General of California, *Intervenor-Defendant-Appellee*. | |

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted February 8, 2022
Portland, Oregon

---

* Rob Bonta has been substituted for his predecessor, Xavier Becerra, as California Attorney General under Fed. R. App. P. 43(c)(2).

Filed June 8, 2022

Before:  Richard A. Paez and Jacqueline H. Nguyen, Circuit Judges, and John R. Tunheim,[**] District Judge.

Opinion by Judge Nguyen

---

**SUMMARY**[***]

---

**Civil Rights**

The panel affirmed the district court's dismissal of two cases brought pursuant to 42 U.S.C. § 1983 by Medicaid providers and former members of public-sector unions alleging that the California State Controller, in deducting union dues from appellants' Medicaid reimbursements, violated the anti-reassignment provision of the Medicaid Act, which prohibits state Medicaid programs from paying anyone other than the providers or recipients of covered services.

California uses some of its Medicaid funding to provide assistance with daily activities to elderly and disabled beneficiaries under a program called In-Home Support Services (IHSS).  The recipients of these services are responsible for employing and overseeing the work of their IHSS providers, who are often family members.  IHSS

---

[**] The Honorable John R. Tunheim, Chief United States District Judge for the District of Minnesota, sitting by designation.

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

providers are paid by the State Controller because California law treats them as public employees. The Controller makes a variety of standard payroll deductions, including for federal and state income tax, unemployment compensation, and retirement savings. California law also authorizes the Controller to deduct union dues from the paychecks of IHSS providers.

The panel held that the Medicaid Act's anti-reassignment provision, 42 U.S.C. § 1396a(a)(32), does not confer a right on Medicaid providers enforceable under § 1983. The text and legislative history of the anti-reassignment provision make clear that Congress was focused on preventing fraud and abuse in state Medicaid programs rather than on serving the needs of Medicaid providers. Because Congress did not intend to benefit Medicaid providers, the anti-reassignment provision did not confer a right an enforceable under § 1983.

**COUNSEL**

William L. Messenger (argued), Heidi E. Schneider, and Amanda K. Freeman, National Right to Work Legal Defense Foundation Inc., Springfield, Virginia; Rebekah C. Millard, Mariah Gondeiro, Karin Sweigart, and Robert Alan Bouvatte, Jr., Freedom Foundation, Olympia, Washington; for Plaintiffs-Appellants.

Anthony O'Brien (argued), Jeffrey A. Rich, and Lara Haddad, Deputy Attorneys General; Anthony R. Hakl and Mark R. Beckington, Supervising Deputy Attorneys General; Thomas S. Patterson, Senior Assistant Attorney General; Rob Bonta, Attorney General; Office of the

Attorney General, Sacramento, California; for Defendants-Appellees Betty Yee and Rob Bonta.

Stacey M. Leyton (argued) and Scott A. Kronland, Altshuler Berzon LLP, San Francisco, California, for Defendants-Appellees Service Employees International Union Local 2015, and United Domestic Workers of America, AFSCME Local 3930.

**OPINION**

NGUYEN, Circuit Judge:

Appellants, Medicaid providers and former members of public-sector unions, challenge the district courts' dismissals of these two cases, which we consolidated on appeal. When appellants joined the unions, they authorized the California State Controller to deduct union dues from their Medicaid reimbursements. Appellants now contend that, when the Controller made these deductions, she violated the "anti-reassignment" provision of the Medicaid Act, which prohibits state Medicaid programs from paying anyone other than the providers or recipients of covered services. *See* 42 U.S.C. § 1396a(a)(32).

Appellants brought these putative class actions under 42 U.S.C. § 1983, which makes state actors liable for violating federal rights. But not every federal law gives rise to a federal right that private parties can enforce under § 1983. We must therefore decide a threshold question — not whether the anti-reassignment provision has been violated, but whether that provision confers a federal right on Medicaid providers.

For a federal statute to confer a right, "Congress must have intended that the provision in question benefit the plaintiff." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). Here, the text and legislative history of the anti-reassignment provision make clear that Congress was focused on preventing fraud and abuse in state Medicaid programs rather than on serving the needs of Medicaid providers. Because Congress did not intend to benefit Medicaid providers, we hold that the anti-reassignment provision does not confer a right that they can enforce under § 1983. We therefore affirm.

# I

## A

Under Medicaid, the federal government provides funding to state programs that offer health care for people of limited means. The Medicaid Act imposes numerous conditions on states concerning the operation of their Medicaid programs, which the Secretary of Health and Human Services may enforce by withholding funds from non-compliant states. *See* 42 U.S.C. §§ 1396a, 1396c; *see also Planned Parenthood Ariz. Inc. v. Betlach*, 727 F.3d 960, 963 (9th Cir. 2003). As one such condition on state Medicaid programs, the anti-reassignment provision prohibits states from making payments for services to anyone other than the provider or recipient. *See* 42 U.S.C. § 1396a(a)(32).

California uses some of its Medicaid funding to provide assistance with daily activities to elderly and disabled beneficiaries under a program called In-Home Support Services (IHSS). *See* Cal. Welf. & Inst. Code § 12300 *et seq.* The recipients of these services are responsible for

employing and overseeing the work of their IHSS providers, who are often family members.

IHSS providers are paid by the State Controller because California law treats them as public employees. *See id.* § 12301.6(c)(1). The Controller makes a variety of standard payroll deductions, including for federal and state income tax, unemployment compensation, and retirement savings. *See id.* § 12302.2(a)(1). California law also authorizes the Controller to deduct union dues from the paychecks of IHSS providers. *See id.* § 12301.6(i)(2).

**B**

Appellants provide services through California's IHSS program. They all became members of the public-sector union with exclusive bargaining rights in their counties — either the Service Employees International Union Local 2015 (SEIU) or the United Domestic Workers of America AFSCME Local 3930 (UDW). When they signed up, appellants authorized the State Controller to deduct union dues from their paychecks. That authorization included an agreement that they could only revoke their consent during brief annual windows.

Appellants resigned from their unions outside the annual revocation windows. But they wanted their dues deductions to stop immediately. When the dues deductions continued, they brought these two putative class actions under 42 U.S.C. § 1983 against their former unions and State Controller Betty Yee.

Appellants alleged that the continuing dues deductions violated their rights under the First Amendment and the Medicaid Act's anti-reassignment provision. In *Polk v. Yee*, the district court granted a motion to dismiss under Federal

Rule of Civil Procedure 12(b)(6), and the *Polk* appellants elected not to amend their complaint. In *Quirarte v. UDW*, the district court granted a motion for judgment on the pleadings under Rule 12(c).

Both district courts dismissed these cases for the same reasons. As to the First Amendment claim, the district courts concluded that the unions were not state actors and that appellants' consent to pay union dues precluded any First Amendment liability. This court subsequently decided *Belgau v. Inslee*, which rejected a virtually identical First Amendment claim on the same rationale. 975 F.3d 940 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2795 (2021). Appellants now concede that *Belgau* forecloses their First Amendment claim. As to the Medicaid Act claim, both district courts held that the anti-reassignment provision does not confer a right on providers that is enforceable under § 1983.

Appellants in both cases timely appealed. Shortly before oral argument, we consolidated these appeals for all purposes under Federal Rule of Appellate Procedure 3(b)(2).

## II

We have jurisdiction under 28 U.S.C. § 1291. Reviewing de novo, *see Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246 (9th Cir. 2017) (judgment on the pleadings); *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011) (dismissal under Rule 12(b)(6)), we affirm.

## A

In *Blessing v. Freestone*, the Supreme Court established a three-part test to determine whether a federal statute confers a right enforceable under § 1983: "(1) 'Congress must have intended that the provision in question benefit the

plaintiff,' (2) 'the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence,' and (3) 'the statute must unambiguously impose a binding obligation on the States.'" *Anderson v. Ghaly*, 930 F.3d 1066, 1073 (9th Cir. 2019) (quoting *Blessing*, 520 U.S. at 340–41). "If all three prongs are satisfied, 'the right is presumptively enforceable' through § 1983." *Planned Parenthood*, 727 F.3d at 966 (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002)).

To demonstrate that the anti-reassignment provision confers a federal right, appellants must satisfy the first prong by showing that Congress intended to benefit Medicaid providers. *See Sanchez v. Johnson*, 416 F.3d 1051, 1062 (9th Cir. 2005) (holding that no enforceable right existed because the first prong was not met). Under this prong, we must "determine whether Congress 'unambiguously conferred' a federal right," which above all "requires 'rights-creating language.'" *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012) (quoting *Gonzaga*, 536 U.S. at 283–84 & n.3). "[I]t is Congress's use of explicit, individually focused, rights-creating language that reveals congressional intent to create an individually enforceable right in a spending statute." *Sanchez*, 416 F.3d at 1057. Because the Medicaid Act "does not describe every requirement in the same language," we carefully examine the language of the particular Medicaid provision at issue. *Id.* at 1062. And to confirm what that language reveals, we may look to other indicia of congressional intent, including structure, legislative history, and agency interpretations. *See Ball v. Rodgers*, 492 F.3d 1094, 1112–15 (9th Cir. 2007).

Crucially, whether Congress intended to confer a right is a distinct question from whether the correct interpretation of

the statute would benefit the plaintiff. "'[F]alling within the general zone of interest that the statute is intended to protect' is not enough." *All. of Nonprofits for Ins., Risk Retention Grp. v. Kipper*, 712 F.3d 1316, 1326 (9th Cir. 2013) (quoting *Gonzaga*, 536 U.S. at 283). "[I]t is *rights*, not the broader or vaguer 'benefits' or 'interests' that may be enforced under the authority of [§ 1983]." *Gonzaga*, 536 U.S. at 283. Even if a statute "incidental[ly] benefit[s]" the plaintiff, *All. of Nonprofits*, 712 F.3d at 1327, that does not by itself show that Congress "*intended* that the provision in question benefit the plaintiff," *Blessing*, 520 U.S. at 340 (emphasis added); *see also Sanchez*, 416 F.3d at 1059 (explaining that, while Medicaid providers "may certainly benefit from their relationship with the State, . . . they are, at best, indirect beneficiaries" under 42 U.S.C. § 1396a(a)(30)(A), which thus confers no right).

Appellants devote a substantial portion of their briefs to arguing that the anti-reassignment provision prohibits all payments to third parties, including union dues deductions. But that is not the issue before us. Whether the anti-reassignment provision prohibits union dues deductions is a separate question about the scope of the statute. We need not decide that question and we instead ask whom Congress intended to benefit.

**B**

With those principles in mind, we begin with the language of the anti-reassignment provision: "A State plan for medical assistance must . . . provide that no payment under the plan for any care or service provided to an individual shall be made to anyone other than such individual or the person or institution providing such care or

service, under an assignment or power of attorney or otherwise . . . ."**1**  42 U.S.C. § 1396a(a)(32).

Because "cooperative federalism programs like Medicaid . . . are necessarily phrased as a set of directives to states that wish to receive federal funding," *Anderson*, 930 F.3d at 1074, we cannot infer a lack of congressional intent to create an enforceable right from the bare fact that a Medicaid provision is a state program requirement, *see* 42 U.S.C. § 1320a-2; *Ball*, 492 F.3d at 1111–12.  We therefore give no weight to the initial portion of the anti-reassignment provision — "[a] State plan for medical assistance must . . . provide" — which only captures Medicaid's status as a federal spending program.

We instead examine whether the statute makes "recognizing and enforcing individual beneficiaries' rights . . . a condition for federal funding of the state program." *Anderson*, 930 F.3d at 1074.  The key question is whether the text of the statute is "phrased in terms of the persons benefited . . . with an *unmistakable focus* on the benefited class."  *Gonzaga*, 536 U.S. at 284 (citation and internal quotation marks omitted).  The dividing line is between statutes that are "concerned with whether the needs of any particular person have been satisfied" and those that are "concerned . . . solely with an aggregate institutional policy and practice."  *Ball*, 492 F.3d at 1107 (citation and internal quotation marks omitted).  We ask on which side of the line the main portion of the text falls: "no payment . . . for any care or service provided to an individual shall be made to

---

**1** This provision is subject to narrow exceptions not relevant to this case.  *See* 42 U.S.C. § 1396a(a)(32)(A)–(D).

anyone other than such individual or the person or institution providing such care or service."  42 U.S.C. § 1396a(a)(32).

The focus of this statutory language is on state payment practices.  "Payment" is the subject of the statute's main clause.  And the statute is phrased in terms of what the state may *not* do — make "payment . . . to anyone other than" service providers or recipients — rather than in terms of what providers are to receive.  *Id.*  The statute only references providers following "other than," which underscores this focus on state payments.  Even when describing the payees, the statute emphasizes those who are not to be paid.  The provision's language "is directly concerned with the State as administrator and only indirectly with recipients and providers as beneficiaries of the administered services."  *Sanchez*, 416 F.3d at 1062.  *But see Anderson*, 930 F.3d at 1074 (noting that "[g]iven the conditional nature of [federal spending] programs, the statutes enacting them will nearly always be phrased with a partial focus on the state").

Nothing in the statutory language reflects that Congress was "concerned with 'whether the needs of [Medicaid providers] have been satisfied.'"  *Ball*, 492 F.3d at 1107 (quoting *Gonzaga*, 526 U.S. at 288).  The statute does not say that "payment must only be made to providers or recipients," much less that "only providers or recipients are to receive payment," as other rights-conferring Medicaid provisions are phrased.  *Cf. Planned Parenthood*, 727 F.3d at 966 ("Any individual eligible for medical assistance . . . may obtain such assistance from any [provider] qualified to perform the service or services required." (quoting 42 U.S.C. § 1396a(a)(23)) (emphasis omitted)); *Watson v. Weeks*, 436 F.3d 1152, 1159–60 (9th Cir. 2006) ("[A] state plan for medical assistance must provide 'for making medical

assistance available, including at least [designated care and services],' to 'all individuals' meeting specified financial eligibility standards." (quoting 42 U.S.C. § 1396a(a)(10))). Unlike these other formulations, which are phrased in terms of Medicaid providers, the anti-reassignment provision "refers to [Medicaid providers] only in the context of describing the necessity of developing state-wide policies and procedures," and as "a means to an administrative end rather than as individual beneficiaries of the statute."[2] *Sanchez*, 416 F.3d at 1059.

Given this administrative focus, we cannot say that the anti-reassignment provision's language shows that Congress "unambiguously conferred" an enforceable right on Medicaid providers. *Gonzaga*, 536 U.S. at 283.

## C

We need not, however, rely on the statutory language alone. Another signal of congressional intent — legislative history — confirms that the anti-reassignment provision does not confer a right on Medicaid providers. When legislative history suggests whom Congress intends to benefit, it can be highly probative under the first prong of the *Blessing* test. *See All. of Nonprofits*, 712 F.3d at 1326–27.

In *Alliance of Nonprofits*, we recognized that the Liability Risk Retention Act (LRRA), which preempts

---

[2] The anti-reassignment provision refers to Medicaid providers as "person[s]," 42 U.S.C. § 1396a(a)(32), and "usually such use is sufficient . . . to finding a right for § 1983 purposes," *Planned Parenthood*, 727 F.3d at 966 (quoting *Ball*, 492 F.3d at 1108). But, as we explain, the statute's administrative focus and its clear legislative history show that this language does not signal Congress's intent to confer an enforceable right in this case.

certain state laws applicable to insurers, contained some rights-creating language. *Id.* at 1326. But we explained that "even if such language is *necessary* to the conclusion that Congress intended to create an enforceable right, that does not mean it is *sufficient* to do so." *Id.* (citation omitted). We then looked to the legislative history, which indicated that "Congress primarily enacted the LRRA to benefit buyers of insurance, rather than the insurance companies themselves." *Id.* at 1326–27. Accordingly, we held that the legislative history demonstrated that the statute conferred at most an "incidental benefit" on insurers, which "does not rise to the level of the 'unambiguously conferred' right that *Gonzaga University* requires us to find." *Id.* at 1327 (quoting *Gonzaga*, 536 U.S. at 283).

Here, as in *Alliance of Nonprofits*, the legislative history leaves no doubt that Congress did not intend to benefit Medicaid providers. The anti-reassignment provision was enacted in response to a practice by providers of assigning their receivables to third parties, also known as "factoring."[3]

---

[3] Many courts have so characterized the anti-reassignment provision. *See Matter of Missionary Baptist Found. of Am., Inc.*, 796 F.2d 752, 757 n.6 (5th Cir. 1986) ("An examination of the legislative history of this provision reveals that its purpose was to prevent 'factoring' agencies from purchasing medicare and medicaid accounts receivable at a discount and then serving as the collection agency for the accounts."); *Danvers Pathology Assocs., Inc. v. Atkins*, 757 F.2d 427, 430 (1st Cir. 1985) (Breyer, J.) ("The purpose of the statute was to stop this 'factoring' of Medicaid receivables—the selling of Medicaid obligations to collection agencies at a discount and the presentation of those obligations by the collection agencies to the state for payment."); *Michael Reese Physicians & Surgeons, S.C. v. Quern*, 606 F.2d 732, 734 (7th Cir. 1979) ("Congress wished to eliminate factors, thereby making each provider responsible for billing for services rendered and personally liable for payments received for those services."), *aff'd on reh'g en banc*, 625 F.2d 764 (7th Cir. 1980).

Providers would collect a percentage of the value of their claims, and the assignees would "undertake the effort and expense of submitting those claims to the states and would keep the reimbursement payments for themselves." *California v. Azar*, 501 F. Supp. 3d 830, 834 (N.D. Cal. 2020).

The House and Senate reports show that Congress adopted the anti-reassignment provision out of concern that factoring had led to fraud and abuse in the Medicaid program. The anti-reassignment provision was added to the Medicaid Act as part of the Social Security Amendments of 1972. Pub. L. No. 92-603, § 236(b)(3), 86 Stat. 1329, 1415 (1972). The reports from both chambers explained why Congress viewed factoring as a problem and how the anti-reassignment provision would help.

> Experience with this practice under these programs shows that some physicians and other persons providing services reassign their rights to other organizations or groups under conditions whereby the organization or group submits claims and receives payment in its own name. Such reassignments have been a source of incorrect and inflated claims for services and have created administrative problems with respect to determinations of reasonable charges and recovery of overpayments. Fraudulent operations of collection agencies have been identified in medicaid. Substantial overpayments to many organizations have been identified in the medicare program, one involving over a million dollars.

> Your committee's bill seeks to overcome
> these difficulties by prohibiting payment
> under these programs to anyone other
> than the patient, his physician, or other
> person who provided the service . . . .
>
> H.R. Rep. No. 92-231, at 104 (1971),
> *reprinted in* 1972 U.S.C.C.A.N. 4989,
> 5090; *see also* S. Rep. No. 92-1230,
> at 205 (1972).

The anti-reassignment provision was amended as part of
the Medicare-Medicaid Anti-Fraud and Abuse Amendments
of 1977 to eliminate a loophole that involved power of
attorney agreements.  Pub. L. No. 95-142, § 2(a)(3), 91 Stat.
1175, 1176 (1977).  The reports from both chambers again
underscored that the goal of the anti-reassignment provision
was to prevent fraud and abuse in the Medicaid program and
argued that the "power of attorney" loophole should be
closed to better accomplish that purpose.

> By 1972, it had become apparent that such
> reassignments were a significant source of
> incorrect and inflated claims for services paid
> by medicare and medicaid.  In addition, cases
> of fraudulent billings by collection agencies
> and substantial overpayments to these so-
> called "factoring" agencies were also found.
> Congress concluded that such arrangements
> were not in the best interest of the
> government or the beneficiaries served by the
> medicare and medicaid programs . . . .
>
> Despite these efforts to stop factoring of
> medicare   and   medicaid   bills,   some

practitioners and other persons have circumvented the intent of the law by use of a power of attorney. The use of a power of attorney allows the factoring company to receive the medicare or medicaid payment in the name of the physician, thus allowing the continuation of program abuses which factoring activities were shown to produce in the past.

The bill would modify existing law to preclude the use of a power of attorney as a device for reassignments of benefits under medicare and medicaid . . . .

H.R. Rep. No. 95-393, at 44 (1977), *reprinted in* 1977 U.S.C.C.A.N. 3039, 3051; *see also* S. Rep. No. 95-453, at 6–7 (1977).

These reports clearly show that Congress was concerned not with "whether the needs of [Medicaid providers] have been satisfied," but instead with "aggregate institutional policy and practice." *Ball*, 492 F.3d at 1107 (citations and internal quotation marks omitted). The anti-reassignment provision was Congress's effort to end a practice among Medicaid providers because it interfered with the sound fiscal administration of the Medicaid program. In the face of this legislative history, we cannot say that "Congress . . . intended that the provision in question benefit [Medicaid providers]," as the first prong of the *Blessing* test requires. 520 U.S. at 340; *see also All. of Nonprofits*, 712 F.3d at 1326–27.

This legislative history harmonizes with our reading of the text. The textual focus on payment practices reflects

Congress's goal of ensuring that state Medicaid payments are not lost to fraud and abuse.  Given that goal, the anti-reassignment provision's reference to Medicaid providers is only "as a means to an administrative end rather than as individual beneficiaries of the statute." *Sanchez*, 416 F.3d at 1059.  Considering text and legislative history together eliminates any doubt that Congress did not intend to confer a right on Medicaid providers enforceable under § 1983.

## D

Appellants emphasize that, even though Congress was motivated by concerns about factoring, it enacted a broader prohibition encompassing all forms of diversion of Medicaid funds to third parties.  However, as discussed above, appellants' argument would at most show that Medicaid providers are indirectly benefited by Congress's decision to enact a broad prohibition — not that Congress's purpose was to benefit Medicaid providers.  That does not suffice. *See All. of Nonprofits*, 712 F.3d at 1327 (explaining that an "incidental benefit does not rise to the level of [an] 'unambiguously conferred' right" (quoting *Gonzaga*, 536 U.S. at 283)); *see also Sanchez*, 416 F.3d at 1059.

Appellants also point out that the Centers for Medicare and Medicaid Services (CMS) adopted their broad interpretation of the anti-reassignment provision in a 2019 regulation. *See* Reassignment of Medicaid Provider Claims, 84 Fed. Reg. 19718 (May 6, 2019), *vacated by Azar*, 501 F. Supp. 3d at 843.  More recently, however, CMS issued a rule clarifying that employment-type payroll deductions do not violate the anti-reassignment provision. *See* Reassignment of Medicaid Provider Claims, 87 Fed. Reg. 29675 (May 16, 2022) (codified at 42 C.F.R. § 447.10(i)).  But even if CMS maintained its old interpretation, appellants still cannot show that *Congress* intended to confer an enforceable right.  As

we have pointed out in response to similar arguments before, "an agency cannot create a right enforceable through § 1983 where Congress has not done so."  *Dev. Servs. Network v. Douglas*, 666 F.3d 540, 548 (9th Cir. 2011); *see also AlohaCare v. Haw. Dep't of Human Servs.*, 572 F.3d 740, 747 (9th Cir. 2009) ("Although 'a regulation may be relevant in determining the *scope* of the right conferred by Congress,' ultimately 'the inquiry must focus squarely on Congress's intent.'" (citation omitted)).

We therefore hold that the Medicaid Act's anti-reassignment provision, 42 U.S.C. § 1396a(a)(32), does not confer a right on Medicaid providers enforceable under § 1983.  We affirm the district courts' dismissals of these cases.

**AFFIRMED.**